627 F.2d 1128
 13 ERC 1762, 201 U.S.App.D.C. 142, 9
Envtl. L. Rep. 20,582
 The MOTOR AND EQUIPMENT MANUFACTURERS ASSOCIATION, INC., Petitioner,
v.
ENVIRONMENTAL PROTECTION AGENCY and Barbara Blum, Acting
Administrator, Environmental Protection Agency, Respondents,
State of California and Automobile Importers of America,
Inc., Intervenors.
 No. 78-1794.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 26, 1979.
Decided Aug. 3, 1979.
Rehearing Denied Oct. 25, 1979.
 
 Petition for Review of Actions of the Administrator of the Environmental Protection Agency.
 Mark R. Joelson, Washington, D. C., with whom Marc L. Fleischaker and Lawrence P. Postol, Washington, D. C., were on the brief, for petitioner.
 James McNab, III, Atty., E. P. A., Washington, D. C., a member of the bar of the Supreme Court of California, pro hac vice, by special leave of court, Bruce I. Bertelsen, Atty., E. P. A., Washington, D. C., a member of the bar of the Supreme Court of Michigan, pro hac vice, by special leave of court, and David E. Dearing, Atty., Dept. of Justice, Washington, D. C., with whom Sanford Sagalkin, Acting Asst. Atty. Gen., John Z. Bernstein, Gen. Counsel, and Gerald K. Gleason, Atty., E. P. A., and Angus Macbeth, Atty., Dept. of Justice, Washington, D. C., were on the brief, for respondents. James W. Moorman and Lloyd Guerci, Attys., Dept. of Justice, Washington, D. C., also entered appearances for respondents.
 Joel S. Moskowitz, Deputy Atty. Gen. of State of Cal., Sacramento, Cal., for intervenor State of Cal.
 Milton D. Andrews, Donald M. Schwentker and Lance E. Tunick, Washington, D. C., were on the brief for intervenor Automobile Importers of America, Inc.
 Before WRIGHT, Chief Judge, and MacKINNON and ROBB, Circuit Judges.
 Opinion for the court filed by Circuit Judge MacKINNON.
 MacKINNON, Circuit Judge:
 
 
 1
 Section 209 of the Clean Air Act, 42 U.S.C. § 7543 (Supp. I 1977), provides that the Administrator of the Environmental Protection Agency shall waive federal preemption for California's motor vehicle emissions control standards, enforcement procedures, and other conditions precedent to the initial retail sale of motor vehicles unless the Administrator makes certain findings that such a waiver is inappropriate.[1] In June 1978, the acting Administrator of the EPA invoked section 209 and waived federal preemption for California regulations concerning exhaust emission standards and enforcement procedures. Among these regulations is an optional certification procedure[2] whereby manufacturers can elect to avoid showing that their vehicles meet a stringent nitrogen oxides emission standard over 50,000 miles if they can show instead that their vehicles meet a somewhat less stringent nitrogen oxides emission standard over 100,000 miles. The amount of maintenance which can be performed on the vehicle used during the certification process is limited. The amount of maintenance a manufacturer can require of purchasers in the manuals accompanying new vehicles is restricted to that which can be performed during the certification process.[3]
 
 
 2
 Petitioner[4] seeks to set aside the acting Administrator's decision to waive the optional 100,000 mile procedure on the ground that it is arbitrary, capricious, and not in accordance with law. In their view, section 209 does not give the Administrator the power to waive preemption of regulations limiting in-use maintenance. Alternatively, they complain that the acting Administrator neglected to consider all the factors he must address in a waiver proceeding, and improperly placed the burden of demonstrating the impropriety of a waiver on them.
 
 
 3
 The issues petitioners raise are essentially the same as those discussed in another opinion we issue today, The Motor & Equipment Manufacturers Association, Inc. v. EPA ("MEMA I ").[5] In that decision, we hold (1) that section 209 empowers the Administrator to waive preemption of accompanying enforcement procedures like in-use maintenance regulations, (2) that in passing on a waiver request involving procedures relating to standards for which a waiver has already been granted, the Administrator need only address whether the procedures imperil the protectiveness of California's emissions standards and whether the procedures are consistent with section 202(a) of the Clean Air Act; and (3) that the parties favoring denial of a waiver request carry the burden of showing that the request should be denied. These conclusions dispose of the bulk of petitioners' attacks on the acting Administrator's decision to waive preemption of the 100,000 mile certification procedure, and we consequently find no need to elaborate on the matters here. We write but briefly to address two of petitioners' arguments which peculiarly relate to the 100,000 mile certification procedure. We hold that there is a rational basis for the acting Administrator's decision to waive, and we accordingly deny the petition to vacate her order.
 
 
 4
 California has a particular concern with the emission of oxides of nitrogen from motor vehicles. In 1977, to accommodate "California's longstanding belief that stringent control of oxides of nitrogen emission from motor vehicles may be more essential to public health protection than control of carbon monoxide,"[6] Congress amended section 209 to allow California to issue standards for oxides of nitrogen more stringent than corresponding federal standards and to maintain standards for carbon monoxide less stringent than applicable federal regulations.[7] Exercising this prerogative, California adopted standards for oxides of nitrogen beginning in the 1983 model year which are more stringent (0.4 grams per mile) than the federal standard (1.0 grams), and standards for carbon monoxide which are less stringent (7.0 grams) than the federal counterpart (3.4 grams).[8] California's regular certification process for these standards requires a manufacturer to show that vehicles will meet these standards over 50,000 miles; the useful life for warranty purposes is 50,000 miles or 5 years, whichever first occurs.[9]
 
 
 5
 In consideration of the fact that diesel-powered motor vehicles traditionally have higher oxides of nitrogen emissions than gasoline-powered motor vehicles, California adopted an optional certification procedure with a higher oxides of nitrogen standard (1.5 grams). Under this procedure a manufacturer must run its durability test vehicle for 100,000 miles in order to be certified. The manufacturer must also project that production vehicles will comply with the optional oxides of nitrogen standard for 100,000 miles or 10 years, whichever first occurs, rather than the regular 50,000 mile/5 year alternative.
 
 
 6
 Petitioner's principal objection to the waiver is based on its view that the optional 100,000 mile procedure will have anticompetitive consequences. This is so, petitioner contends, because the restrictions on allowable maintenance contained in the procedure, when coupled with the manufacturers' warranty obligations, will create a financial and psychological tie-in between the franchised dealers and the vehicle owner. The acting Administrator did not consider this contention in the original waiver decision, but on reconsideration the Administrator declared that it was without merit.[10]
 
 
 7
 In MEMA I we hold that while the Administrator must be sensitive to the anticompetitive concerns Congress expressed in section 207 of the Clean Air Act,[11] and while he is free to consider whatever arguments are advanced by those opposing a waiver, he has no obligation under section 209 to guarantee that California's regulations are without anticompetitive implications. In this case, petitioner raised issues of anticompetitiveness and the Administrator did address them. We think the Administrator correctly rejected the claim.
 
 
 8
 The record is barren of any factual data or economic analyses indicating the anticompetitive consequences petitioner professes to foresee. Insofar as petitioner's argument turns on the fact that the restriction on allowable maintenance will encourage the manufacture of more durable emission-related parts and thereby effect a reduction in the amount of repairs which vehicles meeting the standards will require, the contention essentially is that the antitrust laws forbid technological development. Absent an intent to restrain competition, however, there can be no violation of the antitrust laws in encouraging the manufacture of more durable parts. To the extent petitioner's argument pivots on the alleged impact the regulations will have on where the maintenance required of the vehicle owner will be performed, nothing in the regulations violates Congress' concern that manufacturers not determine or direct who performs maintenance on in-use vehicles. California's regulations are silent on who shall perform in-use maintenance. The regulations do not permit a manufacturer to require the vehicle owner to patronize franchised dealerships; instead they are neutral on which sector of the aftermarket industry will perform required or any other type of maintenance. It may be that the independent automotive parts and services industry will suffer from the imposition of warranty requirements, but it is for Congress to make the choices on the costs and benefits of particular enforcement programs.
 
 
 9
 Petitioner's other objection is that the "waiver decision does not cite one iota of evidence supporting the conclusion that the 100,000 mile certification procedure is feasible for gasoline-powered vehicles."[12] This statement is essentially correct,[13] but it is of little solace to petitioner. For the Administrator to deny a waiver request from California, he must find on the basis of evidence advanced by the manufacturers and other affected parties that the regulations California seeks to adopt are technologically infeasible. The 100,000 mile certification procedure is an option, and only if it is one among several technologically infeasible options is the California program in peril. The Administrator elsewhere held that the 50,000 mile certification procedure is not technologically infeasible.[14] Manufacturers are free to use the 50,000 mile certification procedure, and indications are that most intend to do so.[15] This explains why there was no evidence to support the technological feasibility of the 100,000 mile certification procedure for gasoline-powered vehicles. Manufacturers of those vehicles, aware that they had the option of the 50,000 mile certification, simply chose to ignore the 100,000 mile option. Petitioner cites no instance of the acting Administrator ignoring evidence of technological infeasibility of the 100,000 mile certification procedure as it relates to diesel-powered motor vehicles.[16] No manufacturer is being required to choose between two impossible options.
 
 
 10
 Petitioner has failed to show that the acting Administrator's decision to waive was arbitrary, capricious, or otherwise not in accordance with law. In consequence, we decline to vacate her order. It is
 
 
 11
 So ordered.
 
 
 
 [1]
 Section 209 as amended in 1977 provides:
 (a) Prohibition
 No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part. No State shall require certification, inspection, or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor engine, or equipment.
 (b) Waiver
 (1) The Administrator shall, after notice and opportunity for public hearing, waive application of this section to any State which has adopted standards (other than crankcase emission standards) for the control of emissions from new motor vehicles or new motor vehicle engines prior to March 30, 1966, if the State determines that the State standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards. No such waiver shall be granted if the Administrator finds that
 (A) the determination of the State is arbitrary and capricious,
 (B) such State does not need such State standards to meet compelling and extraordinary conditions, or
 (C) such State standards and accompanying enforcement procedures are not consistent with section 7521(a) of this title.
 (2) If each State standard is at least as stringent as the comparable applicable Federal standard, such State standard shall be deemed to be at least as protective of health and welfare as such Federal standards for purposes of paragraph (1).
 (3) In the case of any new motor vehicle or new motor vehicle engine to which State standards apply pursuant to a waiver granted under paragraph (1), compliance with such State standards shall be treated as compliance with applicable Federal standards for purposes of this subchapter.
 (c) Certification of vehicle parts or engine parts
 Whenever a regulation with respect to any motor vehicle part or motor vehicle engine part is in effect under section 7541(a)(2) of this title, no State or political subdivision thereof shall adopt or attempt to enforce any standard or any requirement of certification, inspection, or approval which relates to motor vehicle emissions and is applicable to the same aspect of such part. The preceding sentence shall not apply in the case of a State with respect to which a waiver is in effect under subsection
 (b) of this section.
 (d) Control, regulation, or restrictions on registered or licensed motor vehicles
 Nothing in this part shall preclude or deny to any State or political subdivision thereof the right otherwise to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles.
 42 U.S.C. § 7543 (Supp. I 1977).
 
 
 [2]
 A certification procedure enables a manufacturer to demonstrate through use of a prototype that a particular motor vehicle family will comply with applicable exhaust emission standards. This showing results in the issuance of a certificate of conformity which permits the manufacturer to manufacture and sell the motor vehicle in California
 
 
 [3]
 The optional 100,000 mile certification procedure limits scheduled maintenance to the inspection, replacement, cleaning, adjustment, or servicing, at certain mileage intervals as follows: drive belt tension (no more frequently than 30,000 miles); valve lash (15,000), air filter (30,000), and fuel filter (30,000). At oral argument, counsel for the State of California stated that allowance for maintenance on the spark plugs was under consideration. See note 16 infra
 
 
 [4]
 Petitioner Motor & Equipment Manufacturers Association is a trade association representing approximately 750 manufacturers of automotive parts
 
 
 [5]
 201 U.S.App.D.C. ----, 627 F.2d 1095 (1979)
 
 
 [6]
 H.R.Rep. No. 95-294, 95th Cong., 1st Sess. 302 (1977), U.S.Code Cong. & Admin.News, pp. 1077, 1381
 
 
 [7]
 The original waiver provision had required California's standards to be "more stringent" than applicable federal standards. In amending the Clean Air Act in 1977, Congress recognized the "theoretical possibility" that the most stringent set of standards California's for oxides of nitrogen and the EPA's for carbon-monoxide might not be technologically feasible. Id. It therefore authorized California to adopt somewhat less stringent carbon monoxide standards as long as California determined that its standards will be in the aggregate "at least as protective of public health and welfare" as applicable federal standards. See 42 U.S.C. § 7543(b) (Supp. I 1977), reprinted in note 1 supra
 
 
 [8]
 Environmental Protection Agency, Waiver Decision, 43 Fed.Reg. 25729-30 (1978), reprinted in Joint Appendix (J.A.) at 2-3
 
 
 [9]
 Features of the regular procedure are the object of challenge in MEMA I
 
 
 [10]
 Letter from Douglas M. Costle to Mark R. Joelson, et al. (Nov. 1, 1978), reprinted in Joint Appendix in Nos. 78-1896, et al., MEMA I, at 1853-55 ("Reconsideration Letter")
 
 
 [11]
 42 U.S.C. § 7541 (Supp. I 1977)
 
 
 [12]
 Br. of Petitioner at 17-18 (emphasis omitted)
 
 
 [13]
 There were some comments made about the technological feasibility of the 100,000 mile certification procedure, but no manufacturer claimed that because of it certification would not be possible. See Environmental Protection Agency, Waiver Decision, 43 Fed.Reg. 25732-33 (1978), reprinted in J.A. at 5-6
 
 
 [14]
 Environmental Protection Agency, Waiver Decision, 43 Fed.Reg. 32182 (1978)
 
 
 [15]
 See Reconsideration Letter, supra n.10, at 1854-55. Petitioner does not dispute this point
 
 
 [16]
 Petitioner stresses the fact that the allowable maintenance restrictions for the 100,000 mile certification procedure do not contemplate servicing of the spark plugs, see note 3 supra, and contends that "one does not need to be an automotive engineer to realize that a spark plug cannot last 10 years or 100,000 miles," Br. for Petitioners at 18. First, it may be that the common man knows the useful life of a spark plug, but in our eyes the point is not self-evident. There must be evidence in the record to support it, and petitioner cites none. Second, assuming the evidence exists, the 100,000 mile certification procedure evolved as a response to the concerns of diesel-powered motor vehicles, which do not use spark plugs, and it is therefore unsurprising that maintenance on spark plugs was not in issue. The 50,000 mile certification procedure does permit maintenance on spark plugs. Finally, we have been given to understand that California is currently studying the spark plug question to ensure that gasoline-powered motor vehicles will have the 100,000 mile certification option